UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANGELA J. PICKETT, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV907 CDP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Angela Pickett's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Claimant Pickett brings this action asserting that she is disabled because she suffers a variety of side effects stemming from her treatments for Hepatitis C. The Administrative Law Judge concluded that Pickett is not disabled. Pickett appeals the decision denying her disability benefits. Because I conclude that the ALJ's decision is supported by substantial evidence, I will affirm the decision.

## Procedural History

On June 6, 2005, Angela Pickett filed the current application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income payments. The Social Security Administration denied Pickett's application at the initial level and a timely hearing request was filed. Pickett appeared and testified at a hearing held on May 23, 2006. The ALJ issued an opinion on August 7, 2006 upholding the denial of benefits. On March 1, 2007, the Appeals Council of the Social Security Administration denied Pickett's request for review. The ALJ's determination thus stands as the final determination of the commissioner. Pickett filed this appeal on May 4, 2007.

## Testimony Before the ALJ

Picket testified that she received unemployment benefits from May 2005 to October 2005. At the time of her hearing, Pickett was working five hours twice a week at a tanning salon. At that job she answered the telephone and turned beds on and off. Pickett acknowledged that she presented herself as ready, willing, and able to work when she received unemployment.

Pickett further testified that she was imprisoned for four months in 1994 and then was again in prison from 1995 to 2000. She also acknowledged three enrollments in drug rehabilitation programs, the last being in 2002. Picket had her

drivers' license revoked for one year in 1987. She testified that she has not had alcohol since July 2003 and has not used marijuana since the beginning of 2002.

Pickett testified that she did not receive injections for Hepatitis C immediately after being diagnosed because she lost her insurance and her doctor tried to get her into a free program. She said she was getting injections as of the date of her hearing, receiving an injection once a week and taking three pills in the morning and night. She said she has side effects of fatigue, muscle aches, hair loss, and depression. She said depression makes her not want to do anything. She said the injections make her feel like she has the flu. She has nausea for three days and eats crackers. The day after receiving a shot, she sleeps. She testified that her children help with the laundry, housework and meals. Her only physical impairment is her increase in symptoms. Pickett said her treatment was to go twelve to eighteen months. She added that three or four days after the injection, she can resume household activities, but she does not dust or vacuum. Pickett said she does not socialize anymore. She said she did at first, but now only has girlfriends at the house. She said her boyfriend moved on after treatment started, saying it was too much for him.

## Medical Records

The first medical record is dated May 17, 2004, and indicates that Pickett

had a history of chronic Hepatitis C. An October 2004 liver ultrasound at St. John's Mercy Medical Center confirmed that diagnosis and revealed a focal echogenic hepatic lesion most likely representing a benign hemangioma. A subsequent liver needle biopsy showed chronic Hepatitis C, grade 1, stage I. the liver specialist, C. Mobin Khan, M.D., revealed that the biopsy results meant that she did not have significant fibrososi, but did have very early scarring from the Hepatitis C. Because she had been dropped from her insurance, Dr. Khan referred Pickett back to her original doctor, Donald Snodgrass, M.D., for help with enrollment in a free clinic.

Pickett saw George Pelican, M.D., at the JFK Clinic on March 30, 2005. Dr. Pelican reported that Pickett had an essentially normal exam as far as her skin, liver, abdomen, and heart and lungs were concerned. Her history included chronic low back pain, bilateral knee pain, ADD or bipolar disease with some element of mood disorder, polysubstance abuse and chronic Hepatitis C. Dr. Pelican wanted to refer Pickett back to Dr. Khan. He said it was his impression that Pickett's Hepatitis C was grade 1, which was questionable as to whether treatment needs to be done.

Because the medical records are illegible, it is not clear exactly where and when Pickett began receiving treatment for Hepatitis C, but it appears she began

receiving injections in September of 2005 at a St. Louis University Clinic. Partially legible records indicate she began receiving PEG-Intron and ribavirin around that time.

In March 2006, Bruce Luxon, M.D., reported that Pickett returned to the St. Louis University Liver Center for follow-up. She was then on week 27 of treatment with the combination of PEG-Intron and ribavirin. She had fatigue, joint aches and pain, myalgia and sore throat with cough. Dr. Luxon reported that her physical examination was unremarkable. Pickett "continues to exhibit a fair tolerance" of her medications. Dr. Luxon continued Pickett's medication regimen and instructed her to follow-up in three months.

In April 2006, Dr. Luxon reported that Pickett had fatigue, decreased energy and endurance, flu-like symptoms, shortness of breath on exertion, joint aches/myalgias, irritability and anxiety with depression, and insomnia due to the side effects of her treatment medications. Pickett was limited to less than five pounds lifting, one to two hours standing/walking total out of an eight hour day, one to two hours total sitting in an eight hour day, and one to two hours total pushing/pulling out of an eight hour day. Further, Pickett should assume a reclining position for twenty to thirty minutes two to three times per day, a supine position for twenty to thirty minutes one or two times per day, and prop up her legs

for thirty minutes two to three times per day. Dr. Luxon stated these limitations were expected to last for the next seven to eight months.

Before the request for hearing in this case, medical consultants with the State disability determination service made assessments regarding the nature and severity of Pickett's impairments, and concluded that Pickett had the physical capabilities to perform work at the sedentary exertional level. The findings by these consultants are part of the record of this case, and are considered expert opinion on the issue of Pickett's medical capabilities and limitations. Social Security Ruling 96-6p.

Pickett was seen for a consultative psychological evaluation by Alison Burner, M.A., in September 2005. Pickett was taking Wellbutrin for mood swings. Pickett was forthcoming about her prison record. Her history also included daily cocaine use for three years, intravenous heroin and marijuana. Pickett said she had not used anything for three years. She told Ms. Burner she had been in rehab three times. Pickett reported that she currently has no mental health intervention because she has no way to pay. She said she was diagnosed as having bipolar disorder and ADD in the past. She said she had rapid cycling mood swings. She reported when she was in a "great mood," she spent money she did not have, felt really hyper, had trouble sleeping, had poor comprehension, drove

people nuts with phone calls, and acted flirtatious or in a sexually explicit manner. Mental status examination revealed nothing of an acute abnormal nature. Mental control was adequate, insight and judgment were normal, abstract thinking was normal, memory was intact, and her attention and concentration were adequate. Pickett was able to care for her daily needs and those of her child without difficulty. Pickett reported no difficulty in social functioning and reported that she had many friends. She engages in social activities outside the home. Ms. Burner noted that Pickett's difficulties have been long standing and appear to be mild as she has been able to hold jobs for lengthy periods of time. Pickett was able to remember and carry out simple and more complex instructions. Concentration and persistence appeared normal during the examination. Pickett reported adequate functioning in all areas. Pickett reported that her medical problems, not her psychological ones, were the root of her functional difficulties. Diagnoses were bipolar I disorder and cocaine dependence in current remission.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to

support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, she is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, she is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled.

If the claimant cannot perform her past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and

(6) the claimant's functional restrictions.

*Id.* at 1322.

## The ALJ's Findings

The ALJ found that Pickett was not disabled considering her age, education, work experience and residual functioning capacity. She issued the following specific findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's Hepatitis C and treatment side-effects are considrered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: light.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44"

(20 C.F.R. §§ 404.1563 and 416.963).

9. The claimant has a "high school (or high school equivalent) education" (20 C.F.R. §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968).

11. The claimant has the residual functional capcity to perform the full range of light work (20 C.F.R. §§ 404.1567 and 416.967).

12. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.21.

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The ALJ concluded that Pickett's claims of disability were not credible, in part because no doctor said Pickett was unable to work or was disabled. Although Dr. Luxon limited Pickett to less than sedentary work, he specified that these restrictions were only applicable for the next seven to eight months. Additionally, Pickett's daily activities were inconsistent with her medical complaints. Pickett was able to care for herself and her daughter. Though she got help on days immediately following an injection, she was able to resume activity three to four days later. She socialized, had friends, and for a time maintained a relationship with a boyfriend. The record also indicated that Pickett collected unemployment

benefits through the fourth quarter of 2005. Based on her receipt of these benefits, the ALJ concluded that Pickett was capable of working. In order to receive unemployment, Pickett held herself out as ready, willing, and able to work.

## Discussion

Pickett sets forth two arguments for why the ALJ's decision denying benefits should be reversed. First, she argues that the ALJ's finding with respect to Pickett's RFC was not supported by substantial evidence, particularly given that the ALJ disregarded the opinion of Dr. Luxon and the side effects of Pickett's treatments. Second, Pickett argues that the ALJ's credibility finding was not supported by substantial evidence.

### 1. RFC Determination

A claimant's RFC is the most he or she can do despite limitations. RFC is assessed based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). The ALJ here concluded that Pickett retained the RFC to perform light work. Light work is involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). According to the applicable regulation, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. To be

considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. *Id*.

Generally, the opinion of a treating physician is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other sustainable evidence in the record. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2). A treating physician's opinion is given deference over those of consulting physicians. *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992); *Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir. 1991).

Here, Pickett argues that the ALJ failed to properly consider the opinion of a treating physician, Dr. Luxon. In April 2006, Dr. Luxon limited Pickett to less than five pounds lifting, one to two hours standing/walking total out of an eight hour day, one to two hours total sitting in an eight hour day, and one to two hours total pushing/pulling out of an eight hour day. Dr. Luxon further recommended that Pickett assume a reclining position for twenty to thirty minutes two to three times per day, a supine position for twenty to thirty minutes one to two times per day, and prop her legs for thirty minutes two to three times per day. If these limitations were ongoing, there is no doubt that Pickett's ability to sustain gainful employment would be substantially affected. However, Dr. Luxon specified that

these limitations were only expected to last seven to eight months. A disability under the Social Security Act encompasses any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. A limitation expected to last seven to eight months does not qualify. Given that the record does not contain any further evidence showing that these limitations actually lasted longer than expected, the ALJ properly considered the evidence of Dr. Luxon.

The ALJ concluded that Pickett retained the RFC to perform light work. This conclusion was supported by substantial evidence. No medical opinion evidence established that Pickett was able to perform less than light work, and Pickett herself testified that she was able to care for herself and her daughter, to perform daily activities, and to work ten hours a week at a tanning salon. There was no evidence suggesting that Pickett's claimed impairments would be ongoing.

2. Determination of Credibility

Evidence of pain is necessarily subjective in nature. Therefore, an ALJ must look to more than just objective medical evidence of pain, or the lack thereof, in determining whether and to what extent a claimant's pain affects ability to perform work-related activities. *Halpin v. Shalala*, 999 F.2d 342, 346 (8th Cir.

1993); *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). Under the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), an ALJ must fully consider all evidence relating to the subjective complaints, including the claimant's work record, as well as observations of the claimant by others (including treating and examining doctors) as to such matters as daily activities; the intensity, duration, and frequency of the pain and conditions causing and aggravating the pain; and functional limitations. *Ford v. Astrue*, 581 F.3d 979, 982 (8th Cir. 2008). An ALJ must consider these matters but does not have to discuss each one of them in relation to the claimant. An ALJ is permitted to discount the claimant's complaints if they are "inconsistent with the evidence as a whole." *Id*. (quoting *Casey v. Astrue*, 503 F.3d 687, 691 n.3 (8th Cir. 2007). When discounting a claimant's complaints, the ALJ is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford*, 581 F.3d at 982 (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)).

Here, the ALJ properly considered Pickett's testimony and made credibility findings supported by the record evidence. The ALJ determined that Pickett's testimony was not credible in part because there was a lack of medical evidence supporting her claims. Although an ALJ may not discount testimony solely due to

a lack of medical evidence, this is one factor that may properly be considered. *Halpin v. Shalala*, 999 F.2d 342, 346 (8th Cir. 1993). The ALJ noted that Pickett's own testimony established that she was able to care for herself and her daughter, to work part-time, and to carry out her daily living activities. Additionally, Pickett held herself out as ready, willing, and able to work when she received unemployment benefits. This evidence supports a finding that Pickett's testimony as to her limitations was not credible.

In conclusion, the ALJ's determination that Pickett suffers no disability is supported by substantial evidence in the record as a whole. The decision should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed. A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of September, 2008.